UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SYLVESTER OKPOKO,                    :
            Plaintiff,               :
                                     :
    v.                               :        CA 10-43 S
                                     :
F. GERARD HEINAUER, Director,        :
Nebraska Service Center,             :
ALEJANDRO MAYORKAS, Director,        :
United States Citizenship and        :
Immigration Services, and           :
JANET NAPOLITANO, Secretary,         :
Department of Homeland Security,     :
            Defendants.              :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

    In this action, Plaintiff Sylvester Okpoko ("Plaintiff" or
"Okpoko") seeks judicial review of a decision by the United States
Citizenship and Immigration Services ("USCIS") denying an asylee
relative petition which he filed on behalf of his wife.[1]  Before
the Court are two motions:

    1.  Defendants' Motion to Dismiss or, in the Alternative,
Motion for Summary Judgment (Docket ("Dkt.") #4) ("Motion to
Dismiss" or "Defendants' Motion"), and

    2.  Plaintiff's Opposition to Defendants' Motion to Dismiss
or, in the Alternative[,] Motion to [sic] Summary Judgment and

---

[1] Under 8 U.S.C. § 1158(b)(3) (2006), a spouse of an alien
granted asylum may be granted the same status if the spouse
accompanied the alien or followed to join the alien.  Mobombo v.
Holder, No. 10-1619, 2010 WL 4950965, at *1 (4th Cir. Dec. 3, 2010).

Plaintiff's Motion for Summary Judgment (Dkt. #7) ("Plaintiff's Motion") (collectively the "Motions")

Defendants by their motion seek dismissal of Plaintiff's Complaint pursuant to Federal Rule Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Alternatively, Defendants seek summary judgment on the grounds that there are no genuine issues of material fact and, as a matter of law, the denial of the asylee relative petition which Plaintiff filed on behalf of his wife was not unreasonable.

Plaintiff objects to Defendants' Motion and seeks summary judgment on his claims. Like Defendants, Plaintiff contends that summary judgment is appropriate because there are no genuine issues of material fact.

The Motions have been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). After reviewing the filings, listening to oral argument, and performing independent research, I recommend that Defendants' Motion to Dismiss be granted and that Plaintiff's Motion be denied.

## I. Facts

Plaintiff was born in Nigeria in 1969. Complaint (Dkt. #1) ¶ 11. In July 2000 he entered the United States, and on October 18, 2000, an immigration judge granted him asylum. Id. ¶ 12;

Administrative Record ("AR") at 288-89.  On January 25, 2001, Plaintiff filed a Form I-730 Refugee/Asylee Relative Petition ("Petition") with the Immigration and Naturalization Service ("INS") on behalf of his wife, Joy Okpoko ("Ms. Okpoko"). Complaint ¶ 14; AR at 286-87.  The Petition was initially approved by the USCIS under the Immigration and Nationality Act ("INA") Section 208 and forwarded to the Department of State on August 6, 2001.  Complaint ¶ 15; AR at 285.

On March 23, 2004, the United States Embassy/Consulate in Lagos, Nigeria (the "Consulate"), referred Plaintiff's Petition to its fraud unit because the "claimed marriage ... appears to be for immigration purposes alone."[2]  AR at 283.  The Consulate returned Plaintiff's Petition to the National Visa Center ("NVC") on September 23, 2005, with a recommendation that it be revoked because on-site investigation by the Consulate's anti-fraud unit had determined that there had never been any marriage, either traditional or civil, between Plaintiff and Ms. Okpoko.  AR at 260. The Fraud Prevention Unit of the NVC returned the Petition to USCIS

---

[2] It appears that sometime prior to March 23, 2004, the Petition had been returned to the National Visa Center ("NVC") by the United States Embassy/Consulate in Lagos, Nigeria (the "Consulate") with a request that it be revoked.  See Administrative Record ("AR") at 81 (recounting that Ms. Okpoko was first interviewed on January 18, 2002, interviewed a second time on January 25, 2002, and that, thereafter, "[t]he case was returned to the NVC requesting revocation").  Notwithstanding the Consulate's request, the Petition was reaffirmed sometime prior to March 19, 2004, the date of Ms. Okpoko's third interview.  See id. ("The case was reaffirmed.  The beneficiary returned to the Consulate for an interview on March 19, 2004.").

on November 15, 2005, with a recommendation that it be revoked because there was not enough evidence of a marital relationship and the consular officer had concluded that the relationship between Petitioner and Ms. Okpoko was for the sole purpose of obtaining an immigrant visa. AR at 208.

On December 8, 2005, USCIS advised the Consulate that USCIS had reaffirmed its approval of the Petition based on some correspondence, including a marriage certificate, which it had received from Plaintiff.[3] AR at 207. USCIS, however, requested that the Consulate review the authenticity of the marriage certificate. Id. Meanwhile, USCIS notified Plaintiff that the Petition had been approved and forwarded to the NVC. AR at 206.

The NVC transmitted the Petition to the Consulate for processing on January 4, 2006. AR at 205. On May 6, 2006, the Consulate sent a memorandum to the NVC recommending that the Petition be revoked because the marriage certificate was not valid. AR at 107. The memorandum stated in part:

> The case was reaffirmed per an Interoffice Memorandum dated December 8, 2005[,] that stated, "the Service received some correspondence from the petitioner concerning the case. The marriage certificate appears authentic but would like the Consulate to review."
>
> The applicant was interviewed on 14 Mar[.] 2006. She stated she had not seen the petitioner since 2000. The

_____

[3] The memorandum reflecting this request does not explicitly state that the correspondence from Plaintiff included a marriage certificate, but this can be reasonably inferred from the context. See AR at 207.

marriage certificate in question was dated 2005. The
applicant stated that her husband said they needed a
marriage certificate so his brother stood in for him. In
fact, on the marriage certificate where it reads, "This
marriage was celebrated between us," the petitioner's
brother signed his signature and wrote "for (Brother)."
The lawyers from the [Fraud Prevention Unit] confirmed
that while it is possible to have a certificate to
legitimize a customary marriage done by proxy, this is an
actual Certificate of Marriage and it is not legal in
Nigeria to marry by proxy. As it is not legal to marry
by proxy, this is not a legal document, nor is it a legal
marriage. Previous investigation revealed that the
applicant and petitioner had not celebrated a court nor
a traditional marriage before he left Nigeria.

AR at 107.

On May 19, 2006, the Consulate returned the Petition with a
recommendation for reconsideration and, if appropriate, revocation.
AR at 104-06. In an attached report of investigation, the
Consulate stated that Ms. Okpoko "was unable to give a convincing
account of her claimed relationship to the Petitioner ...." AR at
105. The report also noted that there were conflicting statements
from Plaintiff's family members about whether or not he was married
to Ms. Okpoko. AR at 106. Specifically, an investigator had
spoken with Plaintiff's mother; his older sister, Stella; an older
brother, Sunday Okpoko; a grown nephew, God Day Osifo; and four
other relatives, Messrs. Aremonehen, Dawudu, and Momodu and Mrs.
Katherine Osifo. Id. All of these persons, except Sunday, stated
that Plaintiff was not married. Id.

Despite the Consulate's recommendation, USCIS again reaffirmed
the approval of the Petition and sent it back to the Consulate for

issuance of a visa.[4]   AR at 103.   However, on July 31, 2006, the
NVC returned the Petition to USCIS, recommending that it be revoked
because Plaintiff was not physically present at the marriage and
Plaintiff and Ms. Okpoko had not met since 2000.   AR at 102.

On April 5, 2007, USCIS sent a notice of intent to deny to
Plaintiff.[5]   Complaint ¶ 16; AR at 97.   The notice recited that
USCIS had previously approved the Petition, but the matter was
being reopened because the Consulate had discovered that Plaintiff
and Ms. Okpoko were not legally married and that it appeared that
a bona fide relationship did not exist between them.   Complaint ¶
16; AR at 97.

Plaintiff responded to the notice on April 23, 2007.
Complaint ¶ 16; id., Exhibit ("Ex.") 5 at 9-18.   In his response
Plaintiff stated that he and Ms. Okpoko had been married in 1998 in
a traditional marriage ceremony, that the 2005 marriage certificate
which his brother had helped him obtain was only for the purpose of

---

[4] USCIS acknowledged receiving the May 6, 2006, memorandum from
the Consulate which had recommended revocation.  AR at 103 ("Your
observations have been noted and the petition in question has been
reviewed.").  However, USCIS stated that Petitioner "has provided
documentation confirming that a traditional marriage did take place
and that traditional marriages are actually the norm in Nigeria.  The
petitioner ... submitted correspondence from the beneficiary as proof
of an ongoing relationship."  Id.  Concluding that "the documentation
the petitioner submitted initially does not warrant any adverse
action[] at this time," id., USCIS "reaffirm[ed] the approval of the
petition," id.

[5] USCIS sent a notice of intent to deny to Plaintiff's previous
attorney on February 16, 2007.  AR at 98.  The April 5, 2007, notice
was directed to Plaintiff's present counsel.  AR at 97.

confirming Plaintiff's 1998 marriage, and that he had a very strained relationship with a large part of his extended family and little or no contact with the relatives who had stated that he was not married. Complaint, Ex. 5 at 12-14. Plaintiff also questioned whether the consular investigator actually interviewed his mother because in 2005 she "was quite ill." Id. at 13.

On July 26, 2007, USCIS issued a decision which stated that "[a]fter review of the record, the approval of the petition is reaffirmed and the petition has been forwarded to the United States Consulate/Embassy at Nigeria." AR at 85. The Petition was forwarded by the NVC to the Consulate on August 27, 2007. AR at 84.

Almost five months later, on January 16, 2008, the Consulate sent a memorandum to the NVC again recommending that the Petition be revoked. AR at 81. The memorandum stated that this was the third time the case was being returned to the NVC with such a recommendation and recounted its previous history.[6] Id.

> The beneficiary has been interviewed by five separate
> consular officers between 2002 and 2007 regarding the

---

[6] Based on the chronology recited in the memorandum, it appears that this was actually the fourth time that the Consulate had sent the Petition back with a request that it be revoked. The first return followed the Consulate's January 18 and 25, 2002, interviews of Ms. Okpoko. See AR at 81 ("The case was returned to the NVC requesting revocation."). The second followed her March 19, 2004, interview. AR 81-82; see also AR at 82 ("The case was returned to the NVC requesting revocation."). The third followed her March 14, 2006, interview. AR at 82 (stating that "the petition was again sent back to the NVC requesting a revocation"). The fourth return on January 16, 2008, followed the November 26, 2007, interview of Ms. Okpoko. Id.

circumstances of her alleged marriage to and her relationship with the petitioner. Further, this case was the subject of an on-site Fraud Prevention Unit ("FPU") investigation. The conclusions of every interview and the investigation were that the petitioner and the beneficiary are not legally married and that their alleged marital relationship exists solely for the purpose of immigration.

AR at 81.

The memorandum continued. Following the first re-affirmation, "FPU investigators interviewed numerous relatives of both the petitioner and beneficiary, all of whom stated that neither the petitioner nor the beneficiary were married." AR at 81-82. After the second re-affirmation investigators interviewed Ms. Okpoko on March 14, 2006, and she presented email correspondence and a marriage certificate dated June 16, 2005. AR at 82. However, Ms. Okpoko "stated that she had not seen the petitioner since 2000," id., and the document she presented was "an actual 'Certificate of Marriage' and marriage by proxy is neither legal under U.S. law nor under Nigerian law." Id. Following the third re-affirmation, Ms. Okpoko was interviewed on November 26, 2007, and claimed that she had last seen Petitioner in March, 2007 in Ghana. Id. This information did not alter the Consulate's conclusion that she and Petitioner "are still not legally married[,] and their alleged 1998 traditional marriage is not a legal basis for immigration." Id.

The penultimate paragraph of the memorandum summarized the Consulate's view of the matter:

Despite the lengthy rebuttal to the Notice of Intent to

> Deny from the petitioner's attorneys highlighting
> deficiencies in the FPU investigation and attesting to
> the occurrence of the 1998 traditional marriage by
> affidavits of questionable validity, the fact of the
> matter is that neither the petitioner nor the beneficiary
> produced a legally binding marriage certificate upon
> which to base a valid immigration claim.

AR at 82.

On January 29, 2008, the Consulate forwarded its recommendation for denial of the Petition to the NVC. AR at 80. The cover sheet for transmittal of this recommendation indicated that the Petition was being returned "for reconsideration and, if appropriate, revocation." Id. On February 26, 2008, the NVC transmitted the Petition to USCIS with the recommendation that the Petition be revoked. AR at 79.

On May 5, 2008, USCIS served Plaintiff with another notice of intent to deny. Complaint ¶ 19; AR at 77-78. The notice stated that "[t]he consular officer in Lagos, Nigeria[,] concluded that the petitioner and the beneficiary are not legally married and that their alleged marital relationship exists solely for the purpose of obtaining an immigrant visa." AR at 77. The notice also stated "that when foreign documents are relied upon to establish a claimed familial relationship, this Service must be satisfied with the authenticity of such documents." AR at 78. Plaintiff was given thirty days to submit a written rebuttal to the adverse information contained in the notice. Id.

Plaintiff responded on May 23, 2008, with a two page letter

and more than fifty pages of attachments consisting of country reports, Nigerian case law summaries, law journal articles, affidavits, and photographs.  Complaint ¶ 19; AR at 11-76.  The letter stated in part:

> The sum and substance of the notice relates to the consul's returning the petition because "neither the petitioner nor beneficiary produced a legally binding marriage certificate."  **This is a customary marriage**, therefore, no marriage certificate is available.  We are attaching voluminous information, all readily available on the internet, which confirms that customary marriage in Nigeria is recognized by law.

AR at 11.

On October 8, 2008, USCIS denied the Petition.  Complaint ¶ 20; AR at 9-10.  The decision stated in part:

> On April 4, 2008[,] your petition filed on behalf of Joy Okpoko was returned to this office for the third time. A Service Motion to Reopen and Notice of Intent to Deny was sent to the petitioner on May 5, 2008.  At that time the petitioner was informed that the petition had been returned from the consulate in Lagos, Nigeria[,] and that the petition was reopened and may be denied on the basis of additional evidence obtained during the beneficiary's interview abroad.  The consular officer in Lagos concluded that neither the petitioner or beneficiary had produced a legally binding marriage certificate.  In addition, the consular officer determined that the claimed relationship between the petitioner and the beneficiary was solely for the purpose of obtaining an immigrant visa.  You were provided with this information obtained during the beneficiary's interview and given thirty days to respond in writing to this office of your opposition to the proposed denial and to provide additional evidence in support of your petition.
>
> ...
>
> According to the Department of State's Foreign Affairs Manual ["FAM"], traditional marriages may be recorded with the local government and a certificate of marriage

issued.  Places of worship that are registered with the Nigerian Government may also issue marriage certificates for ceremonies performed there.  It is obligatory that every registrar and religious minister furnish such documents to the Lagos Marriage Registry, but some fail to do so.  Records are generally available through the local government where the marriage took place.

The petitioner has yet to provide a marriage certificate in compliance with the [FAM] and registered prior to the petitioner's asylum grant.  The Lagos Consular Section has already referenced the FAM in their recommendation for revocation and does not acknowledge the customary/traditional marriage ceremony.  In addition, the Service does not place more weight on the documents and affidavits submitted over the requirement for a legally binding marriage certificate and/or the procedures outlined in the Department of State's [FAM].  The petitioner's failure to record his customary marriage in accordance with the Nigerian Government and subsequently receive a legally binding marriage certificate from the Lagos Marriage Registry clearly makes his alleged spouse ineligible for any benefits under this Refugee/Asylee Relative Petition.

Title 8, Code of Federal Regulations; part 208.21(f) states:

Burden of Proof.  To establish the claimed relationship of spouse or child as defined in sections 101(a)(35) and 101(b)(1) of the Act, evidence must be submitted with the request as set forth in part 204 of this chapter.  Where possible this will consist of the documents specified in 204.2(a)(1)(i)(B), (a)(1)(iii)(B), (a)(2), (d)(2), and (d)(5) of this chapter.  The burden of proof is on the principal alien to establish by a preponderance of the evidence that any person on whose behalf he or she is making a request under this section is an eligible spouse or child.

Title 8, Code of Federal Regulations, part 204.2(a)(2) states in pertinent part:

... the petitioner must ... provide evidence of the claimed relationship.  A petition submitted on behalf of a spouse must be accompanied by ... a certificate of marriage issued by civil authorities, and proof of the legal termination of all previous marriages of both the

petitioner and the beneficiary.

> The petitioner has clearly not met such burden.  In view of the above, this petition must be and hereby is denied.

AR at 9-10.  The letter concluded by stating that the denial could not be appealed but that if Petitioner believed that he could overcome the grounds for denial, he could submit a motion to reopen or reconsider within thirty days.  AR at 10.

On or about November 5, 2008, Plaintiff filed a motion to reopen/ reconsider.  Complaint ¶ 21; AR at 2-8.  In the motion Plaintiff's counsel twice expressed his belief that the only issue or question was whether or not Plaintiff's marriage had to be recorded to be recognized under Nigerian law.  AR at 5.  He concluded by stating:

> To reiterate, we had previously provided significant evidence that the traditional/customary ceremony actually took place.  We believe that the only issue now is whether or not a certificate must be produced in order to evidence that.

> Given what the Foreign Affairs Manual indicates, we believe that no certificate is required and that the evidence on the record already is adequate to comply with the Applicant's burden of proof.

AR at 5.  USCIS denied Plaintiff's motion to reopen/reconsider on April 10, 2009.  Complaint ¶ 22; AR at 1.

## II.  Travel

Plaintiff filed the instant action on February 1, 2010.  <u>See</u> Dkt.  After receiving extensions of time within which to answer or respond to Plaintiff's Complaint, <u>see</u> Dkt., Defendants filed the

instant Motion to Dismiss on June 4, 2010, see id. Plaintiff filed
an opposition to Defendants' Motion on August 3, 2010. See id.
The Court conducted a hearing on the Motions on September 8, 2010,
and, thereafter, took the matter under advisement.

## III. Discussion

### A. Subject Matter Jurisdiction

#### 1. Law Re Rule 12(b)(1)

In ruling on a motion to dismiss for lack of subject matter
jurisdiction under Fed. R. Civ. P. 12(b)(1), a court must construe
the complaint liberally, treat all well-pleaded facts as true, and
indulge all reasonable inferences in favor of the plaintiff. See
Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996);
Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). "A
plaintiff, however, may not rest merely on unsupported conclusions
or interpretations of law. [S]ubjective characterizations or
conclusory descriptions of a general scenario which *could* be
dominated by unpleaded facts will not defeat a motion to dismiss."
Murphy, 45 F.3d at 522 (alteration in original)(internal quotation
marks and citation omitted).

It is the plaintiff's burden to prove the existence of subject
matter jurisdiction. Aversa, 99 F.3d at 1209; Murphy, 45 F.3d at
522; Narragansett Elec. Co. v. Constellation Energy Commodities
Grp., Inc., 526 F.Supp.2d 260, 268 (D.R.I. 2007); see also Padilla-
Mangual v. Pavía Hosp., 516 F.3d 29, 31 (1st Cir. 2008)("Once

13

challenged, 'the party invoking subject matter jurisdiction ... has the burden of proving by a preponderance of the evidence the facts supporting jurisdiction.'")(quoting <u>Bank One, Texas, N.A. v. Montle</u>, 964 F.2d 48, 50 (1st Cir. 1992)); <u>Palazzolo v. Ruggiano</u>, 993 F.Supp. 45, 46 (D.R.I. 1998).

"[I]n ruling on a Rule 12(b)(1) motion, a court is not limited to the face of the pleadings. A court may consider any evidence it deems necessary to settle the jurisdictional question." <u>Palazzolo</u>, 993 F.Supp. at 46 (citing <u>Aversa</u>, 99 F.3d at 1210); 2 James Wm. Moore et al., <u>Moore's Federal Practice</u> ¶ 12.30[3] (3d ed. 1997)).

### B. Application of Law Re Subject Matter Jurisdiction

Plaintiff appears to argue that this Court has subject matter jurisdiction over this action based on three grounds. <u>See</u> Plaintiff's Memorandum in Support of Opposition to Defendants' Motion to Dismiss or, in the Alternative[,] Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment ("Plaintiff's Mem.") at 3-7 (citing the Administrative Procedures Act, the Federal Question Statute, and the Fifth Amendment); <u>see also</u> Complaint ¶ 4 ("This matter is a civil action against the United States arising under INA § 208(b)(3)(A), 8 U.S.C. § 1158(b)(3)(A), and the Administrative Procedures Act ("APA") § 701, *et seq.* The Court has original jurisdiction under 28 U.S.C. §§ 1331 and

1346(a)(2).[7]").

## 1.  APA

To the extent that Plaintiff contends that the APA provides a
basis for this Court to exercise jurisdiction, see Plaintiff's Mem.
at 3-5, such contention is rejected.  "[T]he APA does not afford an
implied grant of subject-matter jurisdiction permitting federal
judicial review of agency action."  Califano v. Sanders, 430 U.S.
99, 107, 97 S.Ct. 980 (1977); see also United States v. Park Place
Assocs., Ltd., 563 F.3d 907, 929 n.15 (9th Cir. 2009) ("It is beyond
question ... that the APA does not provide an independent basis for
subject matter jurisdiction in the district courts.")(alteration in
original); Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. &
Urban Dev., 480 F.3d 1116, 1122 (Fed. Cir. 2007)(same); Jordan
Hosp., Inc. v. Shalala, 276 F.3d 72, 77 n.4 (1st Cir. 2002)(same).

"The APA does not provide a federal court with any independent
basis for jurisdiction.  Rather, the APA prescribes standards for
judicial review of an agency action, once jurisdiction is otherwise
established."  Michigan Dep't of Envtl. Quality v. U.S. EPA, 318

---

[7] Title 28, Section 1346(a)(2) allows for the district courts to
have concurrent jurisdiction with the Federal Court of Claims over
civil actions or claims against the United States not exceeding
$10,000.00 in amount.  See Empire Healthchoice Assur., Inc. v.
McVeigh, 547 U.S. 677, 686 (2006).  Plaintiff has not alleged any
monetary claims against the United States, and he offers no argument
in his memorandum that 28 U.S.C. § 1346(a)(2) provides a basis for
this Court to exercise jurisdiction.  Accordingly, this Court finds
that Section 1346(a)(2) has no bearing on this case.  Cf. United
States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)(holding that "issues
adverted to in a perfunctory manner, unaccompanied by some effort at
developed argumentation, are deemed waived").

F.3d 705, 709 (6th Cir. 2003)(internal citation omitted); <u>Cervoni v. Sec'y of Health, Educ. & Welfare</u>, 581 F.2d 1010, 1015 (1st Cir. 1978)(citing <u>Califano</u>, 430 U.S. at 105)); <u>see also</u> <u>Conservation Law Found., Inc. v. Busey</u>, 79 F.3d 1250, 1261 (1st Cir. 1996)("While the APA does not provide an independent source of subject matter jurisdiction, it does provide a federal right of action where subject matter jurisdiction exists under 28 U.S.C. § 1331 (giving district courts jurisdiction of all civil actions arising under the laws of the United States).")(citing <u>Japan Whaling Ass'n v. Am. Cetacean Soc'y</u>, 478 U.S. 221, 230 n.4, 106 S.Ct. 2860 (1986); <u>Califano</u>, 430 U.S. at 104-07)).

Plaintiff cites <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 140, 87 S.Ct. 1507 (1967), in his discussion of the APA. <u>See</u> Plaintiff's Mem. at 3. However, <u>Abbott Laboratories</u> has been abrogated by <u>Califano</u>, 430 U.S. at 105. In <u>Califano</u>, the Supreme Court explained that <u>Abbott Laboratories</u> and two other decisions "assumed, with little discussion, that the APA is an independent grant of subject-matter jurisdiction. However, ... the better view is that the APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions." <u>Califano</u>, 430 U.S. at 105 (internal citation omitted). Indeed, the Supreme Court has "held that Congress intended the provisions of the Immigration and Nationality Act of 1952 ... to supplant the APA in immigration proceedings." <u>Ardestani v. INS</u>, 502 U.S. 129, 133, 112

S.Ct. 515 (1991); <u>accord</u> <u>Hamdi v. Napolitano</u>, 620 F.3d 615, 623 (6th Cir. 2010)(same); <u>Ngassam v. Chertoff</u>, 590 F.Supp.2d 461, 465 (S.D.N.Y. 2008)(rejecting argument that APA provides "federal question" basis for jurisdiction to review denial of asylee-relative status petitions); <u>id.</u> at 464 ("[T]he APA does not apply where 'agency action is committed to agency discretion by law.' 5 U.S.C. § 701(a)(2). Therefore, USCIS's decision to deny derivative asylum status to [plaintiff]'s children is exempt from review under the APA because it is discretionary.")(citing 8 U.S.C. § 1158(b)(3)(A)); <u>Mounkam v. Way</u>, No. CV 04-58-TUC-HCE, 2007 WL 974102, at *5 (D. Ariz. Mar. 30, 2007)(rejecting contention that APA "provide[s] an independent basis for subject matter jurisdiction"). The case law cited by Plaintiff, <u>see</u> Plaintiff's Mem. at 3-5, is unpersuasive in the face of the Supreme Court's explicit guidance in <u>Califano</u> and <u>Ardestani</u>.[8]

---

[8] Among other cases, Plaintiff cites <u>Pinho v. Gonzales</u>, 434 F.3d 193 (3rd Cir. 2005), apparently as support for his contention that the APA provides a basis for this Court to exercise jurisdiction. <u>See</u> Plaintiff's Memorandum in Support of Opposition to Defendants' Motion to Dismiss or, in the Alternative Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment ("Plaintiff's Mem.") at 4. Although <u>Pinho</u> held that the district court "had jurisdiction under 28 U.S.C. § 1331 and Section 704 of the [APA], 5 U.S.C. § 704, to review the [Bureau of Immigration and Customs Enforcement Administrative Appeals Office]'s determination of [plaintiff]'s statutory eligibility for adjustment of status," <u>id.</u> at 200, this Court is unpersuaded that the <u>Pinho</u> court believed the APA provided an independent basis for the exercise of subject matter jurisdiction. Rather, the opinion is reasonably interpreted to mean that the <u>Pinho</u> court found that jurisdiction existed under 28 U.S.C. § 1331 and that the APA prescribed the standards for judicial review of the agency action in question. <u>Cf.</u> <u>Michigan Dep't of Envtl. Quality v. U.S. EPA</u>, 318 F.3d 705, 709 (6th Cir. 2003)(making this distinction).

Accordingly, this Court finds that the APA does not provide a basis for the exercise of jurisdiction in this matter. See Hamdi, 620 F.3d at 623. But see Ghafoori v. Napolitano, 713 F.Supp.2d 871, 877 n.6 (N.D. Cal. 2010)(assessing under APA plaintiff's claim that defendants acted contrary to regulation by relying on evidence undisclosed to him to deny his petition to obtain derivative immigration benefits for his daughter).[9]

## 2. Federal Question Jurisdiction

Plaintiff asserts that the Court has original jurisdiction under 28 U.S.C. § 1331. See Complaint ¶ 4; see also Plaintiff's Mem. at 5 ("The Federal Question Statute does provide an independent basis for jurisdiction by this Court."). Overlapping his arguments to some degree, Plaintiff again references the APA. See id. ("As a 'cause of action,' the APA provides an individual basis to sue a federal agency for unlawful agency action where Congress has not specifically provided such a basis anywhere else in the law.").[10]

_____

[9] It appears that the defendants in Ghafoori v. Napolitano, 713 F.Supp.2d 871 (N.D. Cal. 2010), did not raise the issue of subject matter jurisdiction. See id. at 875-76. In fact, they urged the court to evaluate plaintiff's claims under the APA rather than the Declaratory Judgment Act which he had also invoked. See id. at 877 n.6.

[10] In the same paragraph, Plaintiff cites Dine Citizens against Ruining Our Environment v. Klein, 676 F.Supp.2d 1198 (D. Colo. 2009), see Plaintiff's Mem. at 5-6, wherein the court stated "that federal question jurisdiction under 28 U.S.C. § 1331 extends to APA claims unless Congress has specifically precluded judicial review of the particular agency action that is the subject of the APA claim," Dine Citizens, 676 F.Supp.2d at 1205. However, this statement does not

18

For federal question jurisdiction, a plaintiff must allege a violation of his constitutional rights or a right created under federal law.  28 U.S.C. § 1331; <u>Hamilton v. Florida</u>, No. 3:09-cv93/MCR/MD, 2009 WL 722033, at *1 (N.D. Fla. Mar. 18, 2009); <u>see also</u> <u>Gully v. First Nat. Bank in Meridian</u>, 299 U.S. 109, 112, 57 S.Ct. 96 (1936)("To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").  Plaintiff alleges that the denial of his asylee

_____

alter this Court's conclusion that the APA does not provide a jurisdiction basis for this action.  In <u>Chrysler Corp. v. Brown</u>, 441 U.S. 281, 99 S.Ct. 1705 (1979), the Supreme Court explained that:

> Section 10(a) of the APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action ..., is entitled to judicial review thereof."  5 U.S.C. § 702.  Two exceptions to this general rule of review-ability are set out in § 10.  Review is not available where "statutes preclude judicial review" or where "agency action is committed to agency discretion by law."  5 U.S.C. §§ 701(a)(1), (2).

<u>Chrysler Corp. v. Brown</u>, 441 U.S. at 317, 99 S.Ct. 1705 (alterations in original).  Here the second exception applies.  The asylum statute at issue, 8 U.S.C. § 1158(b)(3)(A), does not confer a right to asylum.  Rather, the decision to grant an asylee relative petition is committed to the discretion of the Attorney General.  <u>See</u> <u>Huli v. Way</u>, 393 F.Supp.2d 266, 270 (S.D.N.Y. 2005)("The decision to grant derivative asylum status is entirely discretionary."); <u>see also</u> <u>Miljkovic v. Ashcroft</u>, 366 F.3d 580, 582 (7th Cir. 2004)("[T]he grant of derivative status to the spouse of a successful applicant for asylum is not automatic but requires an exercise of discretion by the immigration authorities."); <u>cf.</u> <u>Chen v. Gonzales</u>, 417 F.3d 268, 270 (2nd Cir. 2005) ("Once an applicant establishes eligibility for asylum, ... the decision whether to grant a particular application is ... within the discretion of the Attorney General.")(second alteration in original); <u>Bucur v. INS</u>, 109 F.3d 399, 402 (7th Cir. 1997)("The statute [8 U.S.C. § 1158(a)] creates a right only to ask the government to exercise discretion to grant or deny asylum favorably to the applicant; it does not confer a right to asylum.").

relative petition violates his procedural and substantive due process rights under the Constitution and his statutory rights under the INA § 208(b)(3)(A) and 8 U.S.C. § 1158(b)(3)(A).[11] Complaint ¶¶ 30-35.

Defendants argue that Plaintiff has not (and cannot) identify any protected interest of which he has been deprived because the denial of his petition is a matter of pure discretion. <u>See</u> Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("Defendants' Mem.")[12] at 13-14. In support of this argument, Defendants note that neither the Constitution nor the United States Code recognizes any right in a United States citizen – let alone an asylee like Plaintiff – to have his alien family member present in this country. <u>See</u> <u>id.</u> (citing, *inter alia*, <u>Anetekhai v. INS</u>, 876 F.2d 1218, 1222 n.5 (5th Cir. 1989)(noting "that [U.S. Citizen] has no constitutional right to

---

[11] 8 U.S.C. § 1158(b)(3)(A) provides in relevant part:

(3) Treatment of spouse and children

    (A) In general

    A spouse or child ... of an alien who is granted asylum under this subsection **may**, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien.

8 U.S.C. § 1158(b)(3)(A) (bold added).

[12] The title of Defendants' memorandum is identical to the title of Defendants' Motion to Dismiss. Notwithstanding the title, the Court defines this document as Defendants' Mem.

have her alien spouse remain in the United States"); <u>Almario v.</u>
<u>Attorney Gen.</u>, 872 F.2d 147, 151 (6th Cir. 1989)(same); <u>Burrafato</u>
<u>v. U.S. Dep't of State</u>, 523 F.2d 554, 555 (2nd Cir.
1975)(reaffirming "the rule that no constitutional right of a
citizen spouse is violated by deportation of his or her alien
spouse"); <u>Silverman v. Rogers</u>, 437 F.2d 102, 107 (1st Cir.
1970)(rejecting argument that government's refusal to allow alien
wife of U.S. citizen to reside in U.S. would deprive them of their
constitutional rights); <u>Swartz v. Rogers</u>, 254 F.2d 338, 339 (D.C.
Cir. 1958) (holding that wife who is U.S. citizen "has no
constitutional right which is violated by the deportation of her
husband").

Defendant also notes that Plaintiff's beneficiary does not
have a protected interest in a grant of derivative asylum. <u>See</u>
Defendants' Mem. at 14; <u>see also</u> <u>INS v. Cardoza-Fonseca</u>, 480 U.S.
421, 443, 107 S.Ct. 1207 (1987)(stating that "an alien who
satisfies the applicable standard under § 208(a)[13] does not have
a *right* to remain in the United States; he or she is simply
*eligible* for asylum, if the Attorney General, in his discretion,
chooses to grant it."); <u>cf.</u> <u>Garcia v. INS</u>, 7 F.3d 1320, 1326 (7th

---

[13] "Section 208(a) of the [Immigration and Nationality] Act, 8
U.S.C. § 1158(a), authorizes the Attorney General, in his discretion,
to grant asylum to an alien who is unable or unwilling to return to
his home country 'because of persecution or a well-founded fear of
persecution on account of race, religion, nationality, membership in a
particular social group, or political opinion.'" <u>INS v. Cardoza-</u>
<u>Fonseca</u>, 480 U.S. 421, 423, 107 S.Ct. 1207 (1987)(quoting INA §
101(a)(42), 8 U.S.C. § 1101(a)(42)).

Cir. 1993)(rejecting argument that aliens have liberty interest in receiving relief through asylum because, *inter alia*, the asylum provision "grants the Attorney General discretionary power to decide whether any alien shall receive asylum; asylum, therefore, is not a right"); <u>Jean v. Nelson</u>, 727 F.2d 957, 984 (11th Cir. 1984)(holding that "excludable aliens ... have no constitutional rights with respect to their applications for admission, asylum, or parole.  The courts do have authority, however, to review the decisions of executive officials in the immigration area to ensure that they have exercised their discretion in accordance with the applicable statutes, regulations, and the announced policies of their agencies."), <u>aff'd</u>, 472 U.S. 846, 105 S.Ct. 2992 (1985).

Thus, Defendants contend that because Plaintiff does not cite any federal statute that provides a cause of action or otherwise creates a federally-protected right or interest that would afford an applicable remedy, Section 1331 does not grant the Court jurisdiction over his claims.  <u>See</u> Defendants' Mem. at 14.  The Court agrees.  <u>See</u> <u>Ware v. FleetBoston Fin. Corp.</u>, No. 05-13565, 2006 WL 1168793, at *3 (11th Cir. May 2, 2006)("To establish federal question jurisdiction, [party invoking federal jurisdiction] must demonstrate that the complaint alleges a violation of constitutional rights or a right created under a federal law."); <u>Huli v. Way</u>, 393 F.Supp.2d 266, 271 (S.D.N.Y. 2005)("Section 1331, standing alone, does not confer subject matter jurisdiction.  The

jurisdiction extends only to claims that arise from some other applicable federal constitutional or statutory provision."); id. (denying petition for writ of mandamus to set aside denial of plaintiff's relative petition seeking derivative asylum for her husband); see also Faraq v. USCIS, 531 F.Supp.2d 602, 606-07 (S.D.N.Y. 2008)(dismissing, for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted, action to compel USCIS and State Department to change the date of receipt on petitions for derivative asylum of plaintiff's wife and children); id. (holding that alleging a violation of INA is insufficient to confer jurisdiction because "that statute does not itself create a cause of action or federally-protected right or interest in derivative asylum status"); Ngassam, 590 F.Supp.2d at 464 (finding that court has no jurisdiction over plaintiff's action which sought declaration that the decision denying asylee-relative status to her children was unlawful and that her children were eligible for, and should be granted, asylee-relative status).

Accordingly, I find that § 1331 standing alone does not provide a basis for this Court to exercise jurisdiction over Plaintiff's Complaint. See Pedemonte v. Holder, Civil Action No. 09-1558 (FLW), 2010 WL 551085, at *1 n.1 (D.N.J. Feb. 16, 2010) (quoting Faraq, 531 F.Supp.2d at 606-07); Jackson v. Fererretti, Civil Acton No. 08-5702(JAG), 2009 WL 192487, at *1 (D.N.J. Jan. 26, 2009)(dismissing complaint for lack of subject matter

jurisdiction where "[t]he only remaining potential basis for subject matter jurisdiction is federal question jurisdiction, pursuant to 28 U.S.C. § 1331," and "[p]laintiff makes no reference to any federal statute or any rights protected by the Constitution of the United States"); <u>Fox v. City of El Paso</u>, No. EP-07-CV-166-PRM, 2007 WL 2901125, at *3 (W.D. Tex. Sept. 28, 2007)("[W]ithout any allegation that he was deprived of a protected liberty interest, [p]laintiff cannot meet his burden to establish that the [c]ourt has federal question jurisdiction over this claim."); <u>Huli</u>, 393 F.Supp.2d at 271.

### 3. Due Process Claims

Plaintiff alleges that the denial of his Petition violates both procedural and substantive due process.[14] <u>See</u> Complaint ¶¶ 30-33. However, as a condition precedent to stating both a valid procedural due process claim and substantive due process claim Plaintiff must possess a constitutionally protected interest in life, liberty, or property. <u>Centro Medico del Turabo, Inc. v.</u>

---

[14] "The substantive component of due process 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" <u>Cook v. Gates</u>, 528 F.3d 42, 49 (1st Cir. 2008). "Typically, when what is at issue is executive action, [the Court] must ask whether the officials have been deliberately indifferent to a liberty interest and deprived the plaintiff of that interest in such a way that the 'behavior of the governmental officer is so egregious, so outrageous that it may be said to shock the contemporary conscience.'" <u>Leamer v. Fauver</u>, 288 F.3d 532, 546-47 (3rd Cir. 2002)(quoting <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 847 n.8, 118 S.Ct. 1708 (1998)). This Court has no difficulty stating that Defendants' behavior falls far short of satisfying this standard.

<u>Feliciano de Melecio</u>, 406 F.3d 1, 8 (1ˢᵗ Cir. 2005); <u>see id.</u> at 7 ("To the extent that [plaintiffs] hope to maintain a procedural due process claim, they must first point to a protected liberty or property interest.")(citing <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 569, 92 S.Ct. 2701 (1972)); <u>Leamer v. Fauver</u>, 288 F.3d 532, 546 (3ʳᵈ Cir. 2002)("The first step in the [substantive due process] analysis is to define the 'exact contours of the underlying right said to have been violated.'")(quoting <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 842 n.5, 118 S.Ct. 1708 (1998)); <u>Kaluczky v. City of White Plains</u>, 57 F.3d 202, 211 (2ⁿᵈ Cir. 1995)("The first step in substantive due process analysis is to identify the constitutional right at stake."); <u>Friedrich v. Sec'y of Health & Human Servs.</u>, 894 F.2d 829, 838 (6ᵗʰ Cir. 1990) ("The first step in deciding a procedural due process claim is to identify the interest to which the due process attaches."); <u>see also</u> <u>Monk v. Huston</u>, 340 F.3d 279, 282-83 (5ᵗʰ Cir. 2003)("The constitutional right to due process is not, however, an abstract right to hearings conducted according to fair procedural rules. Rather, it is the right not to be deprived of life, liberty, or property without such procedural protections."). Defendants argue that Plaintiff has not identified any such right or interest. <u>See</u> Defendants' Mem. at 15. The Court agrees.

While the Supreme Court has extended the requirements of due process to aliens who have entered the United States, <u>Almario v.</u>

<u>Attorney Gen.</u>, 872 F.2d 147, 151 (6th Cir. 1989)(citing, *inter alia*, <u>Mathews v. Diaz</u>, 426 U.S. 67, 77 96 S.Ct. 1883 (1976)), Plaintiff must still show that the interest at stake is one protected by the Constitution or created by statute, <u>see</u> <u>id.</u>  He has not done so. The Constitution does not recognize the right of an alien to bring his alien spouse to this country.  <u>See</u> <u>Banqura v. Hansen</u>, 434 F.3d 487, 496 (6th Cir. 2006)(rejecting plaintiffs' argument "that the Constitution grants them a liberty interest in their marriage, and thus, that the government must give them due process before denying [alien wife] a visa"); <u>Almario</u>, 872 F.2d at 151 ("the Constitution does not recognize the right of a citizen spouse to have his or her alien spouse remain in this country"; <u>cf.</u> <u>Stanturf v. Sipes</u>, 335 F.2d 224, 229 (8th Cir. 1964)("the mere assertion of a constitutional right does not confer federal jurisdiction ... a federal question must exist not in mere form but in substance, and not in mere assertion, but in essence and effect")(internal quotation marks omitted).  There is also no statutory right for Plaintiff to have his wife in this country.  <u>Cf.</u> <u>Almario</u>, 872 F.2d at 151.

Plaintiff asserts that he has "a protected liberty interest ...," Plaintiff's Mem. at 6, but does not identify what that liberty interest is, <u>see</u> <u>id.</u>  Plaintiff additionally asserts that he "has a due process interest in the lawful adjudication of the I-730 petition that Plaintiff filed on behalf of his spouse."  <u>Id.</u>

However, he does not explain how the Defendants' actions are unlawful other than to assert that USCIS acted in an arbitrary and capricious manner by denying the Petition even though he "had provided significant and independent evidence confirming that Plaintiff's traditional/customary Nigerian marriage was valid even without the provision of a state issued marriage certificate." Id. at 7. This assertion fails to establish a constitutional claim because USCIS was not required to accept Plaintiff's evidence in making a decision as to which it had discretion. See De Araujo v. Gonzáles, 457 F.3d 146, 154 (1st Cir. 2006)("A constitutional claim would at least have to be colorable before a court will exercise jurisdiction to review such a claim or question. In other words, a petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an ... argument in constitutional garb ....")(internal citation and quotation marks omitted).

In sum, "[t]he constitutional right to due process is not ... an abstract right to hearings conducted according to fair procedural rules. Rather, it is the right not to be deprived of life, liberty, or property without such procedural protections." Monk v. Huston, 340 F.3d 279, 282-83 (5th Cir. 2003). Plaintiff's claims of violation of due process do not provide a basis for this Court to exercise jurisdiction because he has failed to identify any property or liberty interest of which he is being deprived by the denial of his Petition. See Mollison, VIFX, LLC v. United

<u>States</u>, 481 F.3d 119, 125 (2nd Cir. 2007) (rejecting petitioners'
due process claims for failure to identify any property or liberty
interest of which they are being deprived by the issue of a third
party summons); <u>Weinstein v. Albright</u>, 261 F.3d 127, 134 (2nd Cir.
2001)("In order to prevail on a due process claim, a claimant must
identify a constitutionally protected property or liberty interest
and demonstrate that the government has deprived that party of the
interest without due process of law."); <u>see also</u> <u>Garcia v. Attorney
General</u>, 329 F.3d 1217, 1222 (11th Cir. 2003)("where a
constitutional claim has no merit, the Court does not have
jurisdiction").

## 4. Conclusion Re Subject Matter Jurisdiction

For the reasons stated above, none of the bases which
Plaintiff cites for this Court to exercise subject matter
jurisdiction is valid. Accordingly, I recommend that Defendants'
Motion be granted and that the action be dismissed for lack of
subject matter jurisdiction. <u>Cf.</u> <u>Chiang v. Skeirik</u>, 582 F.3d 238,
242 (1st Cir. 2009)("[I]t is not within the province of any court,
unless expressly authorized by law, to review the determination of
the political branch of the Government to exclude a given
alien.").<sup>15</sup>

---

<sup>15</sup> The Court recognizes that there is a "strong presumption in
favor of judicial review of administrative action ...." <u>INS v. St.
Cyr</u>, 533 U.S. 289, 298, 121 S.Ct. 2271 (2001); <u>see also</u> <u>Kucana v.
Holder</u>, ___ U.S. ___, 130 S.Ct. 827, 840 (2010)(noting "the
presumption favoring judicial review of administrative action"); <u>cf.</u>

## B.  Failure to State a Claim

### 1.  Law Re Rule 12(b)(6)

In 2007, the Supreme Court altered the Rule 12(b)(6) standard in a manner which gives it more heft.  ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008).  "In order to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'"  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S.Ct. 1955 (2007)).  This pleading standard applies to all civil actions.  Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1953 (2009).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Id. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).  The pleading standard Rule 8 does not require "detailed factual allegations," id., but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation, id. (citing Twombly, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a

---

Dine Citizens against Ruining Our Env't v. Klein, 676 F.Supp.2d 1198, 1205 (D. Colo. 2009)(concluding that "unless Congress has expressly precluded judicial review of [the decision(s) at issue], federal question jurisdiction exists for the federal courts to decide [p]laintiffs' claims that the [Office of Surface Mining Reclamation and Enforcement] violated the [National Environmental Policy Act] in the course of reaching these decisions").  Nevertheless, it is Plaintiff's burden to show that subject matter jurisdiction exists, and here the Court is unpersuaded by Plaintiff's arguments for subject matter jurisdiction.  As explained above, Plaintiff does not claim that USCIS has violated any statute and his claims of due process violations are not colorable.

cause of action will not do." _Id._ (citing _Twombly_ at 555).  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." _Id._ (citing _Twombly_ at 557).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." _Id._ (citing _Twombly_ at 570).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. _Id._ (citing _Twombly_ at 556).  The plausibility standard is not akin to a "probability requirement," _id._, but it asks for more than a sheer possibility that a defendant has acted unlawfully, _id._  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  _Id._ (citing _Twombly_ at 557).

In _Iqbal_, the Supreme Court explained that two working principles underlay its decision in _Twombly_.  _Id._  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  _Id._ Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  _Id._ (citing _Twombly_ at 555).  Although for the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true,

the court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Id.</u> at 1949-50. While Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. <u>Id.</u> at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. <u>Id.</u> (citing <u>Twombly</u> at 556). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. <u>Id.</u> Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." <u>Id.</u> (quoting Fed. R. Civ. P. 8(a)(2)).

### 2. **Application of Rule 12(b)(6) Law**

Defendants argue that the Complaint lacks any factual basis to support its claims because Plaintiff has not shown that USCIS acted improperly in denying his derivative asylum petition. <u>See</u> Defendants' Mem. at 16. The Complaint alleges that:

> The USCIS mistakenly relied by misinterpreting the Department of State's Foreign Affairs Manual (FAM) which indicates that "traditional marriages **may (not must)** also be recorded with the local government and a certificate of marriage issued." The FAM clearly indicates that these traditional marriages may be recorded but are not required to be recorded. The Service however ... interpreted the above option as a requirement and denied petitioner's application.

Complaint ¶ 23.

The Court is unpersuaded that Plaintiff has stated a valid claim for relief. In denying the Petition, USCIS accurately quoted the following language of 8 C.F.R. § 204.2(a)(2):

> the petitioner must ... provide evidence of the claimed relationship. **A petition submitted on behalf of a spouse must be accompanied by ... a certificate of marriage issued by civil authorities,** and proof of the legal termination of all previous marriages of both the petitioner and the beneficiary.

AR at 10 (quoting 8 C.F.R. § 204.2(a)(2))(bold added). Thus, Plaintiff's failure to submit the required certificate of marriage is a "facially legitimate and bona fide reason," Chiang, 582 F.3d at 243, to deny the Petition, and this Court has no authority or jurisdiction to look behind the exercise of that discretion, see id. at 242-43 (stating that "when the Executive exercises this power [to exclude a given alien] negatively on the basis of a facially legitimate and bona fide reason, the court will [not] look behind the exercise of that discretion")(quoting Kleindienst v. Mandel, 408 U.S. 753, 770, 92 S.Ct. 2576 (1972)) (second alteration in original); see also Miljkovic v. Ashcroft, 366 F.3d 580, 582 (7th Cir. 2004)("the grant of derivative status to the spouse of a successful applicant for asylum is not automatic but requires an exercise of discretion by immigration authorities").

Accordingly, I recommend that the Complaint be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which

relief can be granted.[16] <u>See</u> <u>Chiang</u>, 582 F.3d at 243 (holding that plaintiff "has failed to state a plausible entitlement to relief and the district court did not err in dismissing ... claim under Rule 12(b)(6)").

**C.  Summary Judgment**

Even if the Court were to conclude that subject matter jurisdiction exists and to forgo recommending dismissal pursuant to Rule 12(b)(6), Defendants are still entitled to judgement on the merits.

**1.  Law Re Summary Judgment**

"Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" <u>Commercial Union Ins. Co. v.</u> <u>Pesante</u>, 459 F.3d 34, 37 (1st Cir. 2006)(quoting Fed. R. Civ. P. 56(c)); <u>accord</u> <u>Kearney v. Town of Wareham</u>, 316 F.3d 18, 21 (1st Cir. 2002).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of

---

[16] It bears noting that the decision also stated that "the consular officer determined that the claimed relationship between the petitioner and the beneficiary was solely for the purpose of obtaining an immigrant visa."  AR at 9.  This Court has no jurisdiction to review this finding of fact.  <u>See</u> <u>Chiang</u>, 582 F.3d at 243 n.7 ("Under the doctrine of consular nonreviewability, the courts ... have no jurisdiction to review this finding of fact."); <u>Ngassam</u>, 590 F.Supp.2d at 466-67 ("This Court does not have jurisdiction to review a consular official's decision, even if its foundation was erroneous, arbitrary, or contrary to agency regulations.").

the non-moving party.  A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)(quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000)(citing Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)).  "[T]he standards are the same where, as here, both parties have moved for summary judgment." Pacific Ins. Co. v. Eaton Vance Mgmt., 369 F.3d 584, 588 (1st Cir. 2004)(quoting Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002)(citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 at 335-36 (3d ed. 1998)("The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."))); see also Specialty Nat'l Ins. Co. v. OneBeacon Ins. Co., 486 F.3d 727, 732 (1st Cir. 2007)("The presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review.")(quoting Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006)).

The non-moving party may not rest merely upon the allegations or denials in its pleading, but must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which it would bear the ultimate burden of proof at trial. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 53 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505 (1986)). "[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002)(quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993))(alteration in original)(internal quotation marks omitted).

"[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. If the evidence presented is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper." Gannon v. Narragansett Elec. Co., 777 F. Supp. 167, 169 (D.R.I. 1991) (citation and internal quotation marks omitted).

35

## 2. Standard of Review

Nowhere is the scope of judicial inquiry more limited than in the area of immigration legislation. Indeed, the Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." The political character of this intrinsically executive function renders it "subject only to narrow judicial review."

Kandamar v. Gonzales, 464 F.3d 65, 72 (1st Cir. 2006)(quoting Adams v. Baker, 909 F.2d 643, 647 (1st Cir. 1990)(citations omitted)); see also INS v. Aguirre-Aguirre, 526 U.S. 415, 425, 119 S.Ct. 1439 (1999)(recognizing that "judicial deference to the Executive Branch is especially appropriate in the immigration context"). Indeed, the Supreme Court has cautioned against "improvidently encroach[ing] on the authority which the [Immigration and Nationality] Act confers on the Attorney General and his delegates." INS v. Jong Ha Wang, 450 U.S. 139, 144, 101 S.Ct. 1027 (1981); Dhine v. Slattery, 3 F.3d 613, 619 (2nd Cir. 1993)(quoting Jong Ha Wang).

Under the APA, the applicable standard of review is whether the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Adams v. United States EPA, 38 F.3d 43, 49 (1st Cir. 1994)(quoting 5 U.S.C. § 706(2)(A)). A court should not set aside agency action as arbitrary and capricious unless the action lacks a rational basis. Id. The scope of review under the arbitrary and capricious standard is therefore narrow, and a court should not substitute its

judgment for that of the agency.  <u>Id.</u>

### 3. Application of Summary Judgment Law

Plaintiff asserts that the "sole reason for the denial was ... Plaintiff's failure to provide a marriage certificate." Plaintiff's Mem. at 3; <u>see also</u> <u>id.</u> at 2-3 ("The only reason relied upon by the Service in its denial of the application was ... Plaintiff's failure to provide a marriage certificate.")(bold omitted).  The Court, however, rejects this assertion.  Fairly read, the decision does not reflect that the Petition was denied solely because Plaintiff failed to produce a marriage certificate.  Rather, the decision indicates that the consular officer's determination that the claimed relationship between Plaintiff and the beneficiary "was solely for the purpose of obtaining an immigrant visa," AR at 9, was a contributing factor in USCIS's ultimate conclusion that Plaintiff had not met his burden of proof, <u>see</u> AR at 10.[17]

The Court similarly rejects Plaintiff's assertion that doubts "about the bona fide nature of the Plaintiff's marriage to his spouse ... were resolved in Plaintiff's favor previously ...." Plaintiff's Mem. at 7.  There is no evidence in the record to support this claim.  The decision itself states that "the Service

_____

[17] Plaintiff mistakenly asserts that the allegation "that the marriage was not bona fide ... was not mentioned in the October 8, 2008[,] Decision." Plaintiff's Mem. at 2.  The decision explicitly stated that "the consular officer determined that the claimed relationship between the petitioner and the beneficiary was solely for the purpose of obtaining an immigrant visa." AR at 9.

does not place more weight on the documents and affidavits submitted over the requirement for a legally binding marriage certificate ...." AR at 10. This statement strongly suggests that USCIS continued to harbor doubts about the bona fide nature of the marriage in the absence of a marriage certificate. Thus, Plaintiff's claim that USCIS's "decision to deny the I-730 application was based on a pure question of law – were the Plaintiff and his wife legally married under Nigeria[n] customary law," Plaintiff's Mem. at 4, is at odds with the record.

Furthermore, the decision specifically states that "[t]he Lagos Consular Section ... does not acknowledge the customary/ traditional marriage ceremony," AR at 10, on which Plaintiff relies as a basis for the Petition. Under the doctrine of consular nonreviewability this Court has no jurisdiction to order the Consulate to recognize Plaintiff's customary/traditional marriage ceremony. See Chiang, 582 F.3d at 243 n.7 ("Under the doctrine of consular nonreviewability, the courts ... have no jurisdiction to review ... finding of fact [that plaintiff and beneficiary have no 'bona fide relationship.']").

A person who files a petition seeking derivative asylum for a spouse is required to "provide evidence of the claimed relationship," 8 C.F.R. § 204.2(a)(2), including "a certificate of marriage issued by civil authorities, and proof of the legal termination of all previous marriages of both the petitioner and

38

the beneficiary," id. An applicant for derivative asylum must demonstrate that the marriage relationship "existed at the time the principal alien's asylum application was approved ...." 8 C.F.R. § 208.21(b). Evidence demonstrating eligibility for derivative asylum status must be submitted with the request "as set forth in part 204 of [8 C.F.R.]," § 208.21(f), and "[w]here possible this will consist of the documents specified in § 204.2 ... (a)(2) ...," id., and those documents include "a certificate of marriage issued by civil authorities," 8 C.F.R. § 204.2(a).

The burden of proving the relationship is on the petitioner. See 8 U.S.C. § 1361;[18] Tongatapu Woodcraft Hawaii, Ltd. v. Feldman, 736 F.2d 1305, 1308 (9th Cir. 1984). The decision may be overturned only if it is arbitrary, capricious, an abuse of discretion, or

_____

[18] 8 U.S.C § 1361 provides in relevant part:

Whenever any person makes application for a visa or any other document required for entry, or makes application for admission, or otherwise attempts to enter the United States, **the burden of proof shall be upon such person to establish that he is eligible to receive such visa or such document,** or is not inadmissible under any provision of this chapter, and, if an alien, that he is entitled to the nonimmigrant, immigrant, special immigrant, immediate relative, or refugee status claimed, as the case may be. If such person fails to establish to the satisfaction of the consular officer that he is eligible to receive a visa or other document required for entry, no visa or other document required for entry shall be issued to such person, nor shall such person be admitted to the United States unless he establishes to the satisfaction of the Attorney General that he is not inadmissible under any provision of this chapter ....

8 U.S.C. § 1361 (bold added).

otherwise not in accordance with the law.  See 5 U.S.C. § 706; cf.
N. Am. Indus., Inc. v. Feldman, 722 F.2d 893, 898 (1st Cir.
1983)("We agree ... that the decision to grant or deny a petition
to obtain a preferential immigration classification is one that is
within the discretion of the INS, and thus, a federal court may
reverse an INS denial of a preference classification only if the
INS abused its discretion.  INS abuses its discretion if it bases
its decision upon an improper understanding of the law if there is
no evidence to support the decision.").

Here there is no reasonable basis for the Court to find that
USCIS denied the Petition based upon an improper understanding of
the law, nor can it be said that there is no evidence to support
the denial.  The Court agrees with Defendants that USCIS exercised
its discretion based on the evidence in the administrative record
that called into question the validity of Plaintiff's alleged
traditional/customary marriage and the marriage certificate
executed by proxy.  The denial of Plaintiff's Petition is a matter
of pure discretion.  It was not an abuse of the agency's discretion
to deny the Petition under these facts.  Cf. INS v. Miranda, 459
U.S. 14, 18 n.4, 103 S.Ct. 281 (1982)(noting "the need for careful
investigation by the INS ... [of immediate relative] petitions");
id. at 19 (stating that "the INS is the agency primarily charged by
Congress to implement the public policy underlying these
[immigration] laws" and that "[a]ppropriate deference must be

accorded its decisions").

Accordingly, even if Defendants are not entitled to dismissal based on the lack of subject matter jurisdiction and Plaintiff's failure to state a claim on which relief can be granted, they are entitled to summary judgment. To the extent that it is necessary to reach this issue, I recommend that Defendants be granted summary judgment. Plaintiff's Motion for summary judgment should accordingly be denied. I so recommend.

## IV. Summary

Plaintiff has failed to meet his burden of demonstrating the existence of subject matter jurisdiction. The APA does not provide an independent basis for the exercise of jurisdiction. There is no federal question jurisdiction because Plaintiff has not identified any federally protected right or interest of which he has been deprived. For the same reason, his claims of due process violations are not colorable and, therefore, also fail to provide a basis to exercise jurisdiction.

Even if jurisdiction were present, the action should still be dismissed pursuant to Rule 12(b)(6). The decision to grant derivative asylum status is entirely discretionary.

Lastly, if it were necessary to reach the issue, Defendants are entitled to summary judgment. The record does not support Plaintiff's claims that the Petition was denied solely because he failed to produce a marriage certificate and that doubts regarding

the bona fide nature of his marriage had been resolved in his favor.  In addition, there is no basis to find that Defendants had an improper understanding of the law or that evidence in the record to support the denial is lacking.

## V.  Conclusion

For the reasons explained above, I recommend that Defendants' Motion be granted and that Plaintiff's Motion be denied.   Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.   <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


/s/  *David L. Martin*
DAVID L. MARTIN
United States Magistrate Judge
February 11, 2011